HEMMER-MILLER DEVELOPMENT CO., Respondt, v. HUDSON INSURANCE CO., Appellant.

(238 N. W. 342.)

(File No. 6835.   Opinion filed October 19, 1931.)

*Martin & Martin,* of Hot Springs, for Appellant.

*E. B. Adams* and *H. M. Lewis,* both of Hot Springs, for Respondent.

ROBERTS, J.  Plaintiff brought this action to recover on a hail insurance policy issued by the defendant insurance company. Evidence was introduced by the plaintiff as to the percentage of loss to the crops insured, but there was neither allegation or proof as to the value of the crops before or after the hail storm.  The

defendant submitted no evidence. A motion was made by the defendant for a directed verdict on the ground that there was insufficient evidence to prove loss or damage, and, upon denial of such motion, plaintiff moved for a directed verdict, which was granted. From the judgment entered thereupon, defendant appeals.

The defendant contends that the policy issued to the plaintiff is not a valued policy, that the plaintiff could only recover the actual amount of damage sustained, and, to recover upon the policy, plaintiff was required to prove the actual value of the crops damaged. The provisions of the policy pertinent to the present inquiry are as follows (paragraph numbers are ours):

"1. This company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance, whether valid or not, covering any crop insured hereunder, in whole or in part, against loss or damage by hail.

"2. This company shall not be liable for loss or damage by hail to any crop herein described, or any part thereof, unless such loss or damage equals five per cent (5%) or more of the total insurance, against loss or damage by hail, applying to the particular crop so damaged, at date of loss nor, except for such portion as is traceable directly to hail, for any loss or damage to any crop herein described, or any part thereof, from any other cause or causes combined with hail nor for any loss or damage by hail to crop herein described, or any part thereof, where such crop has been so injured or damaged from any other cause or causes as to preclude a profit over and above the actual cost of harvesting, storing and marketing said crop; nor for any loss or damage by hail resulting from the neglect or failure of the insured to cut, dig, pick, pull or otherwise harvest matured crops.

"3. In case of loss there shall be no abandonment to this company of any crop insured hereunder.

"4. In the event of total destruction by hail of any crop herein described, or any part thereof, the amount payable hereunder shall not exceed the amount of insurance herein applying to that particular crop so destroyed, at date of loss, and in the event said crop, or any part thereof, is damaged by hail but not totally destroyed, the amount payable hereunder shall be in such proportion to the amount of insurance herein applying to the particu-

lar crop so damaged at date of loss, as the damage from hail only to the said crop bears to the sound condition of the particular crop so damaged at date of loss, had no loss or damage by hail occurred; but in no event shall this company be liable for more than the actual loss or damage sustained by hail, and in determining the measure of loss or damage, the cost incident to cutting, digging, picking, pulling or otherwise harvesting and marketing, shall not be deducted; but in no event shall this company be liable for any loss unless the loss or damage by hail equals or exceeds five per cent (5%) of the total amount of insurance herein applying to the particular crop so damaged; nor for more than the total amount of insurance herein applying to said crop at date of loss. * * *

"5. Within forty-eight (48) hours after the happening of any loss or damage by hail to any crop herein described, provided such loss or damage equals five per cent (5%) or more of the total insurance, against loss or damage by hail, applying to the particular crop so damaged, at date of loss, the insured shall send by registered mail to this company, a written notice of loss signed by the insured, stating the number of this policy, the day and hour of loss, the amount of other insurance against loss or damage by hail, if any, and such information as may be required in notice of loss furnished by the company; * * *

"6. If the actual loss or damage by hail to any crop herein described, is less than five per cent (5%) of the total amount of insurance, against loss or damage by hail, applying to the particular crop so damaged, then the insured shall pay all the expenses of investigating the said claim.

"7. Within sixty (60) days after the happening of any loss or damage equalling five per cent (5%) or more of the total amount of insurance, against loss or damage by hail, applying to the particular crop so damaged, at date of loss, unless such time is extended in writing by this company, the insured shall send to the company by registered mail, a statement in proof of loss which statement shall be signed and sworn to, setting forth the number, date and expiration of the policy, the location and description of the crops damaged, the knowledge and belief of the insured as to the time and origin of the loss, the interest of the insured and all others in such crops, all other insur-

ance whether valid or not covering said crop against loss or damage by hail, the amount of loss or damage claimed, together with a statement in detail showing how and in what manner the amount claimed was determined and whether crops have suffered previous loss,if so, amount of loss and by whom insured."

The plaintiff in its application for insurance, which is by the terms of the policy made a part of the policy, applied for hail insurance on crops growing on twelve separate tracts of land. Each tract is set forth in a separate and consecutively numbered paragraph. The amount of insurance applied for in each paragraph on crops growing on the tract described therein is "not to exceed $14.00 per acre."

An insurance policy must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time the contract was executed, and, in determining the intention of the parties, all the provisions of the policy must be considered and construed together, and the intention ascertained from the language of the policy alone, if possible. Miller v. St. Paul Fire & Marine Ins. Co., 26 S. D. 454, 128 N. W. 609. We have recognized the rule, which plaintiff stresses, that a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer. Axtell v. American Live Stock Ins. Co., 46 S. D. 498, 194 N. W. 652; Farmers' & Merchants' State Bank v. U. S. Fidelity & Guaranty Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A. (N. S.) 1152. But this rule does not permit the court to indulge in forced construction, or to make a new contract for the parties. Miller v. Queen City Fire Ins. Co., 47 S. D. 379, 199 N. W. 455, 35 A. L. R. 263.

In paragraph 4, above quoted, it is stipulated that in the event of total destruction by hail of any crop described in the policy, or any part thereof, the amount payable under the provisions of the contract of insurance "shall not exceed the amount" of insurance applying to the particular crop destroyed. The only description of crops insured and amounts of insurance per acre are found in the application signed by the plaintiff which is expressly made a part of the policy. The amount specified in the application on each kind and field of crop is "not to exceed $14.00 per acre." The words, "shall not exceed" or "not to exceed," when they are used in a policy as a part of the statement of insur-

ance, are those of limitation. They imply that the liability of the insurer shall not be more, but may be less, than the amount stated. The uncertainty of amount distinguishes the open from the valued policy. Stuyvesant Ins. Co. v. Jacksonville Oil Mill (C. C. A.) 10 F. (2d) 54.

It is further stipulated in paragraph 4 that, in the event of partial destruction by hail, the amount payable under the policy shall be in proportion to the amount of insurance applying to the crop damaged as the damage from hail only to the crop bears to the sound condition of the crop damaged at date of loss, had no loss or damage occurred. The liability, however, is expressly limited to actual loss. The provision "but in no event shall the company be liable for more than actual loss or damage sustained by hail" is manifestly applicable to both partial and total destruction of crops by hail.

Counsel for plaintiff cite and rely upon the following cases in support of their contention that the policy in controversy is a valued policy: St. Paul Fire & Marine Ins. Co. v. Pipkin (Tex. Civ. App.) 207 S. W. 360; Fidelity Union Ins Co. v. Mitchell (Tex. Civ. App.) 249 S. W. 536; Fidelity Union Ins. Co. v. Hicks (Tex. Civ. App.) 250 S. W. 1084. The policies construed in these cases were hail insurance policies, and substantially the same form of policy was involved in each case. There was an express provision in each of the policies that, in the event of total destruction of crops, the amount insured per acre would be paid by the insurer, and in the event of partial damage the insurer would pay the same percentage of the amount insured per acre as the crop destroyed bears to the whole crop. The provisions for proof of loss in those policies required proof, not of the actual value of the crops destroyed, but of the "percentage of damage." It will be observed that paragraph 7 of the policy under consideration requires that the proof of loss state the "amount of loss or damage claimed," and not a statement of the percentage of damage. The purpose of a statement of the percentage of damage is apparent where there is a valued policy. When the percentage of loss has been agreed upon, the determination of the amount of the liability becomes then a matter of computation, and a stipulation in a policy that proof of loss state the percentage of damage is an indication that the parties had in mind a fixed valuation of the property

insured. It will be readily observed that provisions of the policies construed in the foregoing cases differ in many essential respects from those of the policy here considered.

An examination of the policy, both in its entirety and in its several parts, leads us to conclude that the parties did not by stipulation or agreement in the policy fix the value of crops insured, and did not contemplate a valued policy.

The plaintiff submitted evidence upon the theory, and the trial court assumed, that the policy was a valued policy. We believe the ends of justice would be best subserved by a retrial of the action. The judgment is therefore reversed, and the cause is remanded for a new trial.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.