BLACK HILLS KENNEL CLUB, INC., Appellant v. FIREMAN'S FUND INDEMNITY COMPANY, Respondent

(94 N.W.2d 90)

(File No. 9694. Opinion filed January 13, 1959)

**Gunderson, Farrar & Carrell,** Rapid City, for Plaintiff-Appellant.

**Hanley, Costello & Porter,** Rapid City, for Defendant-Respondent.

ROBERTS, J.   This is an action brought by the plaintiff against the Fireman's Fund Indemnity Company for the recovery under an insurance policy issued by the defendant to the plaintiff of an amount necessarily expended by plaintiff in the defense and settlement of an action for damages arising out of personal injuries allegedly within the coverage of the policy. The court held that the accident in question was not within the  coverage of the policy and rendered judgment dismissing the action. Plaintiff appeals.

Plaintiff was the owner and operator of a racing track near Rapid City. James Thomas Thomson, six years of age, was injured when in attendance at the race track. The facts in connection with the accident as found by the court are as follows:

"Plaintiff determined to hold a so called 'mutt day' on Sunday, August 13, 1951, as a publicity and public relations measure. In furtherance of this project, the public was invited to attend and enter family pets in the races to be held on that day. Trained racing dogs or dogs with racing experience were not to be allowed to run in the races. Such an event had never, until that time, been held by Plaintiff,

and Defendant was never informed prior to the occurrence of the 'mutt day' event that such an event was planned or was to be held. * *

"When the races were first commenced, the owners of the dogs remained off the track for the first five or six attempted races. The dogs, being family pets, and not trained racing dogs, in most instances did not follow or show any interest in the rabbit lure provided by Plaintiff, and it was not possible to satisfactorily complete those early races. * * *

"The owners of the dogs, which were to be involved in the races, were then invited and requested by Plaintiff to come out on to the track for the purpose of urging and encouraging their dogs to run and for the further purpose of assisting in handling and catching their own dogs; and, said owners were instructed and requested by Plaintiff through its officers, agents and employees in connection with urging and encouraging their dogs to run and handling and catching their dogs as hereinafter set forth. * * *

"James Thomas Thompson, at the invitation of Plaintiff, at the time of his injury, was present on the race track. He had led the dog, which was owned by him and which was entered in the pertinent race, to the starting line of the race, left him there and returned to a place at or near the finish line. In doing so, he was following the procedure suggested and approved by Plaintiff which had been established in prior races, the purpose being to allow the individual dog to watch where his master went and to see his master at the finish line, thus lending encouragement for the dog to run in the race to the place his master was awaiting at or near the finish line of the race. * * *

"James Thomas Thompson, while present on the track for the purposes hereinabove set forth, did urge and give audible encouragement to his dog during the race then being run and was injured while so present and engaged by being struck by the electrically impelled lure which was traveling along the race course, while he, James Thomas Thompson was standing at or near the finish line of the race which was then taking place."

The defense of an action commenced by the mother of the injured boy against the insured owner to recover damages for his personal injuries arising out of the operation of the race track was duly tendered to defendant insurance company and refused. Plaintiff in the instant action sought to recover $6,500 paid in settlement of the Thompson action and amounts expended for attorneys' fees. The insuring agreements of the policy include the following coverage: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of" the ownership and operation of the race track. The following is set forth in the policy under the heading of "Definition of Hazards": "As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient". The policy contains the following endorsement: "In addition to the exclusions in the policy it is agreed that in respect to the risk described in the schedule hereof the company shall not be liable because of bodily injury * * * sustained by any person while practicing for or participating in any contest." Defendant insurance company contends that the injured boy was so participating at the time of his injuries and hence there was no coverage under the policy and no obligation to defend on behalf of the insured.

■■ Plaintiff contends that the words "participating in any contest" have no clear and definite meaning, that they are patently ambiguous and that in construing their meaning in the insurance contract the construction most favorable to the insured should be adopted. The scope of liability insurance is determined from the contractual intent and objectives of the parties as expressed in the policy. Hemmer-Miller Development Co. v. Hudson Ins. Co., 59 S.D. 129, 238 N.W. 342; Binder v. General American Life Ins. Co., 66 S.D. 305, 282 N.W. 521. We are mindful of the

rule of construction that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretations that one most favorable to the insured should be adopted. Cramer v. American Alliance Ins. Co., 72 S.D. 509, 37 N.W.2d 192, 9 A.L.R.2d 577. This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured. Thompson v. State Automobile Ins. Ass'n, 70 S.D. 412, 18 N.W.2d 286. Insurers may assume some risks and exempt themselves from liability for others.

In the case of Fireman's Fund Indemnity Co. v. Hudson Associates, Inc. 97 N.H. 434, 91 A.2d 454, 456, relied upon by plaintiff the same language in an exclusionary clause and the same insurer as in the present action were involved. A crewman was injured while watching a racing contest from the pit at insured's race track. The court said: "So far as the insured was concerned the persons subject to risk of bodily injury during a practice session or a contest fell into two classes, those on the track including the officials and the drivers operating the jalopies and those off the track including both the public in the grandstand and the drivers, owners and crewmen in the pit. Those in the pit during a race were not in substantially greater danger of bodily injury from the racing contest than those in the grandstand. The risks involved to those on and off the track differed materially." Since the word "participating" may denote either an active or passive sharetaking and is patently ambiguous, the court concluded that the clause did not exclude any persons other than those injured while actively engaged in practice sessions or contests themselves and that the crewman was not participating in a contest within the meaning of the policy and was entitled to its benefits.

Plaintiff insists that this is the conclusion reached in the majority of cases which have considered policies excluding injuries sustained by persons while participating in aeronautics or aviation. The following are among those decisions holding that such or similar clauses are ambiguous. Gregory v. Mutual Life Ins. Co. of New York, 8 Cir., 78 F.2d 522; Chappell v. Commercial Casualty Ins. Co.,

120 W. Va. 262, 197 S.E. 723; Martin v. Mutual Life Insurance Company, 189 Ark. 291, 71 S.W.2d 694; Mutual 99 F.2d 856.

In Temmey v. Phoenix Mutual Life Insurance Co., 72 S.D. 387, 34 N.W.2d 833, this court held that death of insured who was a crew member of a navy plane on an authorized flight over territory held by the enemy resulted from a risk of war and not from "participating in aeronautics". This court did not give consideration to the question whether or not the word "participating" in the exclusionary clause was ambiguous and the decision does not sustain the contentions of plaintiff in the instant case.

■ If plaintiff was entitled to have the words "participating in any contest" construed as referring only to active participation, persons immediately connected with the conduct of a racing contest obviously did not come within the coverage of the policy. A spectator though the owner of a dog entered in a racing contest, under such construction would be a passive participant and in the class of persons off the race track including spectators in the grandstand. The hazards involved under these variant circumstances differ materially. The uncontroverted evidence shows that the boy at the time of his injuries was standing on the track at or near the finishing line shouting encouragement to his dog to run. Prompted by the insured owner of the race track, the boy became an active participant in the contest. We conclude that the trial court was correct in 99 F.2d 856.

■ It is claimed by plaintiff as we have indicated that the refusal of defendant insurer to defend on behalf of the plaintiff the Thompson suit was a breach of contract; that the obligation to defend was independent of the undertaking to pay damages. The policy provides that as respects insurance afforded by the policy the insurer shall defend any suit against the insurer alleging injury and seeking damages on account thereof even though groundless, false or fraudulent. The insurer was not obligated to defend an action based on a claim outside the coverage of the policy. The complaint in the Thompson suit is not in evidence. There was no obligation to defend that suit

merely because insurer had agreed to defend all suits seeking to enforce claims even though groundless. Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N.W.2d 593; Village of Luck v. Hardware Mutual Casualty Co., 268 Wis. 223, 67 N.W.2d 306; United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185 F.2d 443; see also Annotation in 49 A.L.R.2d 694. It does not appear that there was a claim asserted against the insurer within the coverage of the policy.

Judgment appealed from is affirmed.

All the Judges concur.