**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, a Corporation,**
**Appellant,**

v.

**KUIPERS CONSTRUCTION COMPANY,**
**Inc., a Corporation, and Midwestern**
**Corporation, a Corporation, Appellees.**

No. 17426.

United States Court of Appeals
Eighth Circuit.

Feb. 12, 1964.

Francis M. Smith, Sioux Falls, S. D., Melvin T. Woods, Howell L. Fuller and John B. Shultz, Sioux Falls, S. D., for appellant.

H. T. Fuller, Mitchell, S. D., Hugh Agor and Joseph Barnett, Aberdeen, S. D., for appellee Kuipers Const. Co.

Joseph H. Barnett, Aberdeen, S. D., Hugh Agor, Aberdeen, S. D., and H. T. Fuller, Mitchell, S. D., for appellee Midwestern Corporation.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an action for declaratory judgment presenting the question of liability coverage afforded the plaintiff Kuipers Construction Company, Inc. (Kuipers) by a policy issued to it by defendant Hartford Accident and Indemnity Company (Hartford). Jurisdiction exists by reason of diversity of citizenship and the requisite amount.

On April 17, 1962, a structural injury to a building located at Mankato, Min-

nesota, owned by Midwestern Corporation was caused by excavation work performed by Kuipers for Midwestern. Midwestern has intervened. The issue presented is whether the policy issued by Hartford and admitted to be in effect covers Kuipers' liability arising out of the damage to the building caused by the excavation.

Hartford's defense is based upon Exclusion (1) of the policy hereinafter set out. This case was tried to the court. The court in a memorandum opinion (not reported) found the policy to be ambiguous with respect to the disputed coverage. The court applied the well-established rule that when provisions of insurance contracts are fairly open to two constructions, the ambiguity should be resolved in favor of the insured. Judgment was entered declaring Hartford liable to the extent of the policy limitations for damages to the Midwestern building caused by the excavation. Defendant's motion to amend findings of fact and conclusions of law and judgment was denied. Hartford took this timely appeal.

The trial court in its memorandum opinion sets out the law governing this case as follows:

"It is a well-settled proposition of law that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. Black Hills Kennel Club, Inc., v. Fireman's Fund Indemnity Co., 77 S.D. 503, 94 N.W.2d 90 (1959). An insurance contract which is subject to two contrary interpretations is ambiguous. Where reasonable doubt exists as to the meaning of the provisions of an insurance contract, the ambiguity must be resolved in favor of the insured. Motor Vehicle Casualty Co. v. Smith, 247 Minn. 151, 76 N.W.2d 486 (1956). This rule is applicable only where the language of the contract is fairly open to two constructions. Cramer v. American Alliance Ins. Co., 72 S.D. 509, 37 N.W.2d 192 [9 A.L.R.2d 577] (1949). Where the language in the contract is plain and clear, no ambiguity exists and the court may not apply the rule of strict construction against the insurer. Sunshine Mutual Ins. Co. v. Addy, 74 S.D. 387, 53 N.W.2d 539 (1952). The court should not indulge in a forced or strained interpretation of otherwise plain language for the purpose of finding that an ambiguity exists and then applying the rule of strict construction. Gorman v. Fidelity & Casualty Co. of New York, 8 Cir., 1932, 55 F.2d 4; Thompson v. State Automobile Ins. Ass'n., 70 S.D. 412, 18 N.W.2d 286 (1945); Miller v. Queen City Fire Ins. Co., 47 S.D. 379, 199 N.W. 455 [35 A.L.R. 263] (1924). The language of the policy must be construed in the light of the intent of the parties at the time the contract was entered into. Thompson v. State Automobile Ins. Ass'n., supra. Also, the words of the policy must be construed in the same manner as a reasonable person in the position of the insured would have understood them to mean. Prudential Insurance Co. v. Barnes, 9 Cir., 1960, 285 F.2d 299; 29 Am.Jur., Insurance, Sec. 247, p. 631; 44 C.J.S., Insurance, Sec. 296, p. 1164." [1]

The foregoing principles of law are correctly stated by the trial court and are not challenged by the parties. This court has frequently recognized the

[1] Defendant urges that the policy is a South Dakota contract since it was countersigned by defendant's agent in South Dakota and delivered there. The trial court found it unnecessary to determine whether South Dakota or Minnesota law should be applied since the general principles of law applicable to the case are the same in both jurisdictions. Like the trial court, we deem it unnecessary to make such determination but may assume for the purposes of this case that South Dakota law applies as urged by defendant.

general rule to the effect that when provisions of an insurance policy considered as a whole are reasonably susceptible of two interpretations, the interpretation favoring the insured will be applied. We have also followed the rule that contracts of insurance, like other contracts, should be reasonably construed according to their terms and that courts are not justified in indulging in a strained interpretation of a contract for the purpose of creating an ambiguity. Cass Bank & Trust Co. v. National Ind. Co., 8 Cir., 326 F.2d 308; State Farm Mut. Auto Ins. Co. v. Pennington, 8 Cir., 324 F.2d 340, 342–343; Jefferson Ins. Co. v. Hirchert, 8 Cir., 281 F.2d 396, 400. See 13 Appleman Ins. L. & P. § 7401–02.

The conflict between the parties arises with respect to the application of the principles just stated to the facts in this case. The decisive issue is whether the policy as a whole is reasonably susceptible of two interpretations, one of which provides coverage.

The answer to this question lies in the provisions of the policy which the defendant sold and delivered to the plaintiff. The policy is labeled "Comprehensive General—Automobile Liability Policy." The policy provisions with respect to "Coverage D—Property Damage Liability" are very broad and agree "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Exclusion (1), so far as here material, reads:

"This policy does not apply:

\*  \*  \*  \*  \*  \*

"(1) under coverage D, to injury to or destruction of any property arising out of  \*  \*  \*

"(2) the collapse of or structural injury to any building or structure due (a) to excavation, including borrowing, filling or back-filling in connection therewith,

\*  \*  \*  \*  \*  \*

and provided further that  \*  \*  \* part (2) of this exclusion does not apply to operations stated, in the declarations or in the company's manual, as not subject to such part of this exclusion."

Turning to the declarations, we find Item 3 states: "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges.  \*  \*  \*" Item 3(D) shows coverage for property damage liability, except automobile, of $100,000 with a stated advance premium of $303.17. The declaration further states insured's business to be building contractor and that declarations are completed on attached schedules designated "Premium Schedule for Comprehensive Policy." (Form L–2412), which form is made a part of the policy.

Form L–2412 lists eight hazards one of which is "Excavation—N.O.C.—including borrowing, filling or back filling." This lists a premium under Coverage D of $18.84. Total premiums on such schedule aggregate $451.95. Of the eight items on the schedule, five include the letters "N.O.C.", the other three do not.

Form L–2371, also made a part of the policy, is entitled "Premium Schedule for Comprehensive Policy—General Liability." This starts out with respect to Coverage D with the aggregate premium shown on L–2412 listed as $451.95, and adds various additional premiums including "(d) Products (Including Completed Operations)  \*  \*  \*  Buildings—N.O.C.", advance premium Coverage D, $119 and also special coverage premiums, Coverage D, $3.38 and shows the total advance premiums for Coverage D to be $597.96.

The trial court, after a detailed review of the policy provisions which we have heretofore set out, determined the policy to be ambiguous with respect to coverage for excavation damage and found the policy to be reasonably susceptible of the interpretation placed upon it by the

plaintiff. As a basis for such conclusion, the trial court states:

> "It is reasonable to find that the insured would interpret the words 'Excavation—N.O.C.' as 'excavation not otherwise covered,' and thus assume that these words constituted a statement that this type of operation was not subject to the exclusion set forth in Exclusion (1). True, the Description of Hazards column contains the statement that the hazards and classifications thereunder stated are subject to the exclusions, conditions and other terms of the policy. Even defendant admits, however, that this language could be overcome if certain entries were made below the words 'Excavation—N.O.C.' In view of the fact that the insured could readily see that he was being charged an advance premium for Coverage D, it would be logical for him to conclude that he was being insured for the risks arising out of excavation not otherwise covered because of Exclusion (1). This would be a natural conclusion to reach in view of the fact that defendant was familiar with the nature of the insured's business.

> \* \* \* \* \* \*

> "It is the Court's opinion that the plaintiff's interpretation of the words 'Excavation—N.O.C.—including borrowing, filling or back filling' is reasonable; that these words had the effect of stating that the operations thus described were not subject to the exclusions set forth in Exclusion (1); and that plaintiff was insured against losses resulting from accidents caused by excavation."

A careful examination of the policy in its entirety, viewed in the light of the applicable legal standards of interpretation above stated, completely satisfies us that the court was justified in finding the policy to be ambiguous and that reasonable basis exists for the interpretation of the policy made by the trial court.

Defendant urges the letters "N.O.C." mean "not otherwise classified" and states that its manual so defines N.O.C. and further asserts that the manual shows that the rating code numbers used in the policy do not include coverage for the loss caused by the excavation. It is agreed that plaintiff was not provided with the company's manual and that plaintiff was unaware of its contents. The language of the policy controls. The insured cannot be bound by manual provisions of which he was unaware and which were not made a part of the policy.

From what has heretofore been said, it is apparent that ambiguities exist in this policy other than and in addition to that with respect to the meaning of the letters N.O.C. We are satisfied that the letters N.O.C. in the premium schedule with respect to coverage for excavation are ambiguous. Such letters could possibly be interpreted to mean "not otherwise covered" as held by the trial court or to mean "not otherwise classified" as contended by Hartford, or could be discarded as meaningless. We do not believe that any of such interpretations would invalidate the court's determination that coverage here exists. However, we accept the court's interpretation of N.O.C. as meaning "not otherwise covered" as a permissible one in light of the rule heretofore stated that an insurance policy should be construed, in event of ambiguity, in the same manner as a reasonable person in the position of the insured would have understood it to mean.

The trial court also upheld plaintiff's alternate contention that in any event damages for loss of use was not within the exclusion. Since we agree with the trial court's broader determination that the policy provides coverage against the consequences of accidental damages caused by excavation, no occasion arises for considering the alternate issue.

The judgment is affirmed.